IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDWARD MONTANEZ,

    Plaintiff,

v.                                                                                          CIV 02-572 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Montanez,[1] previously worked as a janitor, dishwasher, landscaper, assembler and ham processor. He has an eleventh grade education. He suffered a work-related back injury in September 1994 and in December 1994, Dr. J. Pat Livingston performed lumbar laminectomy surgery and excised a ruptured disc. After recovering from surgery and completing all of his rehabilitation goals, Plaintiff's physical therapist recommended in March 1995 that he be permitted to return to work. Montanez in fact worked for a while after his surgery. *E.g., Administrative Record* ("*Record*") at 119, 124, 161-75, 191, 221, 225, 244, 256. In August 1995, however, the month he turned twenty-six, he quit his job because he "worked poorly, missed days, pain in lower back, and in right leg." *Id.* at 115; *see also id.* at 129, 103, 106.

Soon after he quit his job, Montanez applied for supplemental security insurance ("SSI"). His first two applications were administratively denied at the outset in May 1996 and April 1997,

---

[1] His last name also appears as "Montantez" in various parts of the record. I will use the spelling that the Administration and Plaintiff's attorney uses.

respectively. Although Plaintiff requested reconsideration of the 1997 denial, he did not pursue the matter further after his request was denied in May 1997. *See id.* at 71-84.

He applied again for SSI in 1998 alleging an onset of his disability as of the date he was injured on the job in 1994. The 1998 application gave him a protective filing date as of January 2nd of that year. As such, even if Plaintiff as disabled before 1998, he could not have been awarded benefits for a period before January 2, 1998. *See id.* at 15, 110-14; *see also Doc. 18* at 4 (citing 20 C.F.R. § 416.335). Plaintiff did not request the ALJ who considered his 1998 application to reopen the prior denials in 1996 and 1997. *See id.* at 34. Nevertheless, ALJ William F. Nail, Jr., issued a thorough and well-reasoned decision that considered all of the medical evidence dating back to Plaintiff's 1995 surgery. I presume he did so *sua sponte* because the 1998 application was made within one year of the April 1997 denial.[2] Even though Plaintiff failed to address Respondent's suggestion that I only consider medical evidence dated after 1998, based on ALJ Nail's approach, I decline Respondent's suggestion. *See Doc. 18* at 4; *Doc. 19* at 1-4.

ALJ Nail found that Plaintiff has the residual functional capacity to perform "a limited range of light work that allows a sit/stand option and does not require fine motor dexterity." *Record* at 24. With the aid of the testimony from a vocational expert who assumed the above limitations, ALJ Nail identified four jobs Plaintiff can perform: garment processor; teleservice clerk; surveillance system monitor; and tamale machine feeder. The ALJ therefore denied benefits

---

[2] *See* 20 C.F.R. § 416.1487(b) ("We may reopen a final determination or decision on our own initiative or you may ask that a final determination or a decision to which you were a party be reopened."); *id.* at § 416.1488(a) (a determination or decision may be reopened "[w]ithin 12 months of the date of the notice of the initial determination, for any reason").

at Step 5.  *Id.* at 26.  After considering additional evidence, the Appeals Council declined review on March 20, 2002, thereby rendering the ALJ's decision final.  *Id.* at 7-9.

This matter is before the court on Plaintiff's motion to reverse or remand and the additional arguments he raises in his reply, where he essentially asserts that the ALJ committed three errors.  *See Docs. 16, 19.*  Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.

## I.  Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992).  My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency.  *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted).  "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence."  *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## II.  Analysis

Plaintiff generally asserts that ALJ Nail ignored all of the medical evidence from treating physicians in arriving at his decision.  *Doc. 17* at 3; *Doc. 19* at 2.  The ALJ's comprehensive opinion belies this assertion.  The decision examines all of the evidence pertaining to Plaintiff's:

- ! 1994 back surgery and recovery to normal limits;

- January 1996 altercation with the police where he complained of back pain, but no acute injury or illness was found;

- July 1996 gunshot wound to his left elbow and recovery;

- January 1997 injury while working, where he strained his back climbing in and out of a truck;

- March 1997 examination by consulting physician Don Clark;

- May 1997 emergency room visit following a fight with his girlfriend while intoxicated;

- January 1998 CT scan where he was diagnosed with a bulging but not herniated disc and possible carpal tunnel syndrome;

- February through March 1998 evaluation by Dr. R.E. Pennington;

- October 1998 examination by consulting physician A. Jakins, who observed a change in the way Plaintiff walked after he left the doctor's office and who gave an opinion on Plaintiff's functional limitations;

- April 1999 surgery for a stab wound to the chest and recovery with subsequent release in May 1999 to walk but not perform any heavy lifting; and

- November 1999 treatment by Dr. Sheffield for his bulging disc by prescribing Flexeril and Motrin for pain.

*Record* at 16-20.

Plaintiff asserts that the ALJ "improperly tried to combine the functional analysis performed at subsequent steps into step three under the guise of medical equivalence." *Doc. 19* at 2. This argument makes no sense based on the record and ALJ's decision. Moreover, Plaintiff makes no argument that the ALJ's Step Three listings analysis, finding "claimant is not disabled based on the nature and extent of his medical condition alone," *Record* at 21, is erroneous.

Plaintiff contends that ALJ Nail failed to discuss which allegations of pain he found not

4

credible, but the opinion clearly and thoroughly discussed all of Plaintiff's asserted limitations. *See Doc. 19* at 45; *Record* at 22-23.  I believe the point Plaintiff makes boils down to this: because the medical evidence shows that he has chronic back problems and carpal tunnel syndrome, the ALJ had no basis to accept consulting physician Jakins' limitations or to reject Plaintiff's testimony that his unremitting and extreme chronic pain requires him to walk with a cane and lie down with his legs up and or put his legs up frequently throughout the day.  *See Doc. 17* at 3; *Doc. 19* at 3-4; *see also Record* at 62 (question by Plaintiff's attorney to vocational expert: "Now, let's assume . . . that this individual, because of the pain, is required to lay up to three times a day, up to four hours a day, any given day of the week").  I find no merit in this position either.

      First, ALJ Nail found that "claimant's residual functional capacity is reduced, but not eliminated." *Record* at 23.  He noted, as do I, an absence of corroboration in the documentation of his treating sources of the extreme limitations alleged by the claimant." *Id.* at 24.  Other than the fact of his medical conditions, Plaintiff points to no specific evidence in the records of his treating physicians that establish the limitations he claims.  *See id.* at 22-24.

      Second, Plaintiff next argues that it is improper and unfair for the ALJ to use his financially-driven failure to seek medical treatment or take medications as the reason to find him not credible.  *See Doc. 17* at 6-7.  This assertion mischaracterizes one portion of the ALJ's opinion and further takes that portion entirely out of context.  ALJ Nail observed contradictions in Plaintiff's testimony that: (1) he has constant severe pain although he did not seek medical attention for the pain except for one doctor visit in 1999; and (2) for pain, he takes his mother's Vicodin which makes him sleepy contrasted with his report to the treating physician that he does

5

not take the medication because it upsets his stomach. *Record* at 23.

More importantly, ALJ Nail thoroughly considered a number of legitimate factors in arriving at his conclusion that Plaintiff was not wholly credible. They include: Plaintiff's demeanor while testifying; inconsistencies between his testimony and his other statements in the record, including problems with alcohol; Plaintiff's evident interest in obtaining benefits; lack of support for his asserted limitations in the medical records; and walking differently outside the doctor's office after his consultative examination. *See id.* at 22-24.

In faulting the ALJ for not "discussing the considerations or application of the factors mandated by SSR 96-7p" and "not stating clear and convincing reasons for rejecting [his] testimony," *Doc. 19* at 4, Plaintiff ignores the thoroughness of the ALJ's opinion, which specifically discusses a number of the factors listed in the Ruling. The sort of formalistic factor-by-factor discussion Plaintiff is suggesting is not necessary, particularly where, as here, the ALJ issued a comprehensive, clear, and well-reasoned decision. Furthermore, based on my review of the entire record, ALJ Nail considered both the objective and subjective evidence and applied the correct legal standards for his credibility determination. Substantial evidence supports his determination. Therefore, it will not be disturbed by this court.[3]

---

[3] [T]he ALJ did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that plaintiff's allegations of disabling pain were not credible. Contrary to plaintiff's view, our opinion in *Kepler [v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)] does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.

*Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.").

Finally, Plaintiff argues that in his hypothetical question to the vocational expert, the ALJ failed to include Plaintiff's "ability to sit or stand for only 30 minutes to one hour at a time (as needed)." *Id.* at 2; *see also Doc. 17* at 4-5.  Actually, the ALJ found that Plaintiff "requires a sit/stand option because he can sit no more than 30 minutes to one hour without interruption, alternating with standing." *Record* at 25.  He reached that conclusion based on consulting physician Jakins' report, which provides:

> [Plaintiff's] standing and walking are impaired, and he should be allowed to sit and stand as needed.  He could probably work an eight-hour day with thirty minute to one hour intervals.  His sitting is affected.  Without interruption, he can go thirty minutes to an hour.  Without interruptions, he could work and eight-hour day.

*Id.* at 328.  The ALJ specifically asked the vocational expert to testify based on the limitations in Dr. Jakins' report, and it is apparent from the vocational expert's testimony that he was aware of the sit/stand requirement and factored it into the jobs he offered.  *See id.* at 58-59.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 16)* is DENIED and the decision of the Commissioner is affirmed.  A final order will enter concurrently herewith.

                                                                                                                                            /s/ Karen B. Molzen  
                                                UNITED STATES MAGISTRATE JUDGE  
                                                Presiding by consent.